IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Salih Hall, Kenneth Smith, And Lloyd Dixon III,<br>Plaintiffs, | )<br>)<br>)<br>)<br>) |
| Vs. | ) C.A. No. 07-CV-00392 |
| Governor Ruth Ann Minner, et. Al.,<br>Defendants. | )<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION**

**Statement of the Case**

This is a Federal court action pursuant to the American's with Disabilities Act, 42 USCA, Section 12201 and 12133, by state prisoners who have been subjected to sentencing under the state of Delaware's habitual offender statute, 11 Del.C., subsection 4214, on the basis of prior convictions for crimes that were the direct cause of chemical dependency, and declared incorrigible under the statute after being subject to a state criminal justice system which: (1) discriminates against chemical dependency as a bone fide disease based on antiquated law and practice, in spite of substantial advances in scientific knowledge concerning the disease and its now being classified as a disease of the brain by the Diagnostic Statistical manual; and (2) discrimination against them in providing treatment for their disease on the basis of racial bias and systemic racial profiling, thereby encouraging the progression of their untreated disease towards the natural result of new criminal offenses which are being used as the basis of habitual offender declaration.

FILED
SEP 24 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

Plaintiffs now seek a temporary restraining order and preliminary injunction to require defendants to provide for the immediate treatment of their disease, and for the recognition of chemical dependency as an organic mental disorder as it is now classified, and a finding that the denial of such treatment constitutes deliberate indifference to serious medical and mental health needs to which plaintiffs have been subjected

### Statement of facts

As stated in the declaration submitted in support of this motion, the plaintiffs suffer from the disease of chemical dependency, since well before the age of majority and maturity, and as characteristic of the disease, have engaged in a pattern of petty criminal acts to support their addictions. Scientific research has well established the correlation between chemical dependency and crime.[1] It is well documented in records of the criminal justice system, including the courts and correctional system, that the plaintiffs criminal conduct that has come before them has been the proximate cause of their chemical dependency.[2] However, plaintiffs have not been afforded state provided treatment to address the underlying disease causing their charged criminal behavior. Instead, plaintiffs have been incarcerated with no professional treatment opportunity provided them in spite of the evidence that their chemical dependency has been the motivation for crime and the cause of the disruption of major areas of plaintiffs lives.

Studies concerning racial disparity in state provided treatment opportunities in Delaware establish that plaintiffs have been deprived of life saving and changing

---

[1] Delaware as a state entity has been well aware of the correlation between drug addiction and crime. See Drug Involved Offender Coordination Comm., effective management of Drug Involved Offenders, a Report to Governor Michael Castle 4-5 (Del. 1992)

[2] The relationship becomes clearly established after Federal government study. See Nation Institute of Justice, US Department of Justice, Attorney General Announces NIJ Drug use forecasting system, Research in action (1988). Also see Bureau of Justice Statistics, US Department of Justice, Profile of Jail Inmates, 1989 (1991).

opportunities on the basis of systemic racial bias and profiling by the Delaware criminal justice system which in effect amounts to deliberate indifference to serious medical and mental health needs when reviewing treatment for chemical dependency under evolving standards of decency predicated on advances in scientific knowledge classifying chemical dependency as a brain disease and unveiling the disease with modern neurological scientific technology.

The defendants against who relief is sought are responsible for policy and operation of the criminal justice system in the State of Delaware, and therefore are responsible for the criminal justice response to the treatment of chemical dependency, and specifically the current treatment needs of the plaintiffs.

## Argument

### Point I

The plaintiffs are entitled to a temporary restraining order and preliminary injunction requiring defendants to immediately provide them recognized, professional and effective treatment for their disease, and not just some perfunctory version offered in lieu thereof. Plaintiffs are also entitled to and injunction against the state declaration of incorrigibility in light of the fact that their criminal conduct is predicated upon chemical dependency and that they have not been provided the requisite number of chances of reform.

Chemical dependency, now recognized as a disease to the brain, elevates the status of the disease into the realm of any other disease or illness which to deny treatment amounts to deliberate indifference to serious medical and mental health needs as

prohibited by the Eighth Amendment to the United States Constitution and enforceable against the states by way of the Fourteenth Amendment.

In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, courts generally consider several factors: Whether the party will suffer irreparable injury, the "balance of hardship" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion.

### A. The Plaintiffs are threatened with irreparable harm.

The plaintiffs allege that they have been denied treatment for the disease of chemical dependency through systemic racial bias and profiling, and that as a consequence of denial of treatment for the underlying cause of their criminal behavior which is chemical dependency, they have been declared habitual offenders which they assert is the result of deliberate indifference to their serious need for such treatment.

Because of chemical dependency arising to the standard of neurological disease, denial of treatment violate plaintiffs constitutional rights as a form of deliberate indifference.

As a matter of law, the continued deprivation of constitutional rights constitutes irreparable harm. Elrod v. Burns, 427 US 347, 373, 96 S.Ct. 2673 (1976).

Plaintiffs are entitled to relief under the rationale of Farmer v. Brennan, 511 US 825, 128 L.Ed. 2d 811, 114 S.Ct. 1970 (1994). In light of advances in scientific knowledge of chemical dependency, state policy changes resulting from such knowledge of these advances is evidenced by the state of Delaware's participation in longitudinal studies by the University of Delaware's Center for Drug and Alcohol Studies in the Key/

Crest continuum,³ and Delaware's establishment of a drug court,⁴ defendants should have known that chemical dependency is now recognized as a brain disease because of the applications for federal funding, and that to deprive plaintiffs of needed treatment was a failure on the part of the criminal justice system to act despite knowledge of substantial risk of serious harm. It is overwhelmingly evident from the research data that a failure to provide plaintiffs treatment was to almost assist them in re-offending considering statistics.

Plaintiffs have presented a claim of systematic deprivation of serious mental health needs in their denial of treatment for chemical dependency on the basis of race. This pattern of systematic deprivation of treatment on the basis of race is demonstrated by a study conducted by Thomas Eichler, entitled "Race and incarceration in Delaware: A Preliminary Consideration, and forms a prima facia showing that systematic deprivation of state provided treatment in fact exists in Delaware and by implication that the plaintiffs have been victims of the same. Thus, a declaration that plaintiffs are incorrigible under habitual criminal statutes is immediately brought into question. However, the racial discrimination aspect of the claim is not really necessary to demonstrate a constitutional claim of deliberate indifference. The total disregard for evidence in the record concerning the plaintiffs addiction and request for help that fell on deaf ears will suffice. Failure to evaluate the plaintiffs for specific treatment needs is a dereliction of duty and failure to meet statutory requirement by the criminal justice system when it was a matter of record that their criminal conduct was the effects of

---

³ Steven S. martin et. Al., three year outcomes of therapeutic community treatment fro drug involved offenders in Delaware: From Prison to Work Release to Aftercare, 79 The Prison J. 294 (1999).

⁴ Delaware's Drug Court s were developed using existing laws to impose conditions on probation (Del. Code Ann. Tit. 11, Subsection 4332 (2001)

chemical dependency. State policy, prosecutorial discretion, and antiquated state law that conflict with advances in modern scientific knowledge concerning the disease, when such knowledge is prevalent, and in fact has been used by the state to acquire federal funding to create the drug court and treatment programming based on this advanced knowledge render the defendants official action through policy, discretion, and antiquate statutes that much more deliberate and indifferent to plaintiffs known condition and need for help. The state's dealing with the plaintiffs respecting their documented disease can be said to constitute obduracy and wantonness. See Whitly v. Albers, 475 US 312, 106 S.Ct. 1078, 89 L.Ed 2d 551 (1986). The failure of the state to afford plaintiffs state provided treatment when they came into the system through criminal offense based on the disease of chemical dependency produced a condition that posed an unreasonable risk of future harm. See Helling v. McKinney, 509 US 25, 31-32 (1993). This principle equally applies to a lack of adequate mental health screening and failure to followup with known or suspected mental health disorders. See Woodward v. Correctional Medical Services, 368 F.3d 917 (7th Cir. 2004); Inmates of the Allegheny County Jail v. Pierce, 487 F. Supp 638, 642, 644 (W.D.Pa. 1980).

**B. The Balance of hardship favors the Plaintiffs**

In deciding whether to grant this request for a temporary retraining order and preliminary injunction, this court must decide whether the suffering of the moving parties if motion is denied will outweigh the suffering of the non-moving party if the motion is granted.

In this case, the plaintiffs have been subjected to a declaration of status which is tantamount to a legal banishment from civilized society based on a finding of

incorrigibility that is essentially the result of untreated brain disease. This is significant enough without the further complication that the deprivation of treatment is based on systemic racism. See Oyler v. Boles, 82 S.Ct. 501 (1962). To provide the plaintiffs with treatment would amount to no hardship at all to the defendants. Any issue of policy resulting from this court's order of TRO or preliminary injunction will only operate to bring the State of Delaware's public policy into the 21st century and in accordance with evolving standards of decency which is in the publics' best interest. Plaintiffs are not violent offenders in the true sense of the word, and pose no substantial danger to the public, particularly if treatment is being provided. The balance of hardship truly favors the plaintiffs.

### C. The Plaintiffs likelihood of success.

The plaintiffs have a great likelihood for success on the merits if their claim is treated with justice, and not simply suppressed as being inconvenient and threatening to the status quo. What the state of Delaware has in effect done is enhanced their punishment on the basis of the scientifically predictable result of deprivation of state provided treatment. The plaintiffs criminal history relied upon to impose habitual offender status against them is the direct result of untreated brain disease. The recognition of chemical dependency as a bone fide neuro-chemical disease that is interwoven with crime committed to support it, renders plaintiffs continued criminal conduct the direct result of the deliberate indifference to treatment as an initial criminal justice response to the disease resultant criminal behavior committed as characteristic of the disease. Thus, the denial of, or failure to provide, state provided treatment becomes a

-federal constitutional question of significance regarding state policy and state law application.

Plaintiffs submit that they are likely to succeed on the merits of this issue as the defendants have been deliberately indifferent to a brain disease that causes their criminal conduct, which if provided treatment, may have arrested their disease and related criminal behavior.

### D. The Relief Sought will serve the Public Interest.

In this case, the grant of relief will served the public interest because it will fulfill the constitutional social objective of evolving standards of decency in bringing the law into conformity with advances in scientific knowledge and technology. It is timely that chemical dependency be regarded under the law with the same deference as similar neurological disorders and afforded constitutional protection available to protect the deliberate indifference to its treatment. It is against the public interest to incapacitate citizens under a declared status of incorrigible who suffer from known brain disease, which has not been treated, when effective treatment is readily available. The facts of the case show a growing harm to a number of citizens in this country impacted by chemical dependency when its treatment is disregarded on the basis of antiquate laws and policies. It is in the public interest to update law and policy so that it will reflect scientific knowledge of the 21st century.

### Point II

### A. The Plaintiffs should not be required to post security.

Usually a litigant who obtains interim injunctive relief is asked to post security.

Rule 65(c) of the Federal Rules of Civil Procedure. However, the plaintiffs are indigent prisoners, proceeding in forma pauperis, and unable to post security. Orantes – Hernandez v. Smith, 541 F.Fupp. 351, 385 n. 30 (C.D. Cal. 1982); J. L. v. Parham, 412 F.Supp 112, 140 (CD. Ga. 1976), rev'd on other grounds, 442 US 584, 99 S.Ct. 2493 (1979). In view of the significant injustice to which plaintiffs have been subject, the abundant scientific and medical knowledge developing over the past 30 years pertaining to the disease of addiction, and the availability of treatment of which plaintiffs have been systematically denied, the court should grant the relief requested without requiring the posting of security.

**WHEREFORE**, plaintiffs seek relief as requested in the attached motion for temporary relief to which this memorandum is incorporated by reference.

Dated:

_____
Salih Hall

_____
Kenneth Smith

_____
Lloyd Dixon III

Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977