## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

Salih Hall, Kenneth Smith,  )
and Lloyd Dixon III,  )
          Plaintiffs,  )
            )
    Vs.  )  C.A. No. 07-CV-00392
            )
Governor Ruth Ann  )
Minner, et al.,  )
          Defendant.  )

**FILED**

OCT − 4 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

### MOTION TO SUPPLEMENT THE RECORD

**NOW COMES** Plaintiff, and submits the attached study entitled "Race and Incarceration in Delaware: A Preliminary Consideration," by Thomas P. Eichler, as supplement to the complaint filed in this action, and in support of Plaintiffs motion for temporary relief. The herein study establishes prima facia evidence of racial disparity between Blacks and Whites in the states criminal justice system, and specifically with respect to state provided treatment. It is also the basis of statistical data set forth in plaintiffs' complaint.

    **PLEASE FILE** this study as supplemental to the complaint and motion for temporary relief.

Dated: 9 − 26 − 07

_____
Salih Hall

_____
Kenneth Smith

Lloyd Dixon III

**Prose Plaintiffs**
**Delaware Correctional Center**
**1181 Paddock Road**
**Smyrna, De 19977**

## Certificate of Service

I, Salih Hall, hereby certify that I have served a true and correct copy of the

attached: Motion to Supplement the Record, upon the counsel for opposing parties by

sending the same to:

> Joseph R. Biden, Esquire
> Attorney General
> Department of Justice
> 820 N. French Street
> Wilmington, De 19801

By placing the same in the United States Mail at the Delaware Correctional

Center, this 27th day of September , 2007.

Salih Hall
SBI# 104141
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19801



I/M SALIH HALL
SBIP 104141 UNIT WKS
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Clerk of Court
United States District Court
Federal Building
844 King Street
Wilmington, DE 19801

# Race and Incarceration in Delaware:

*A Preliminary Consideration*

*by*

**Thomas P. Eichler**

Published by Delaware Center for Justice and Metropolitan Wilmington Urban League

**The production and printing is underwritten by former Governor Russell Peterson, James Gilliam, Sr., the Metropolitan Wilmington Urban League, and Delaware Center for Justice.**

Recommendations in this report are endorsed by:

ACLU of Delaware
Delaware Center for Justice
League of Women Voters of Delaware
Metropolitan Wilmington Urban League
NAACP, Wilmington Branch
National Association of University Women
Prison Ministries of Delaware
Unitarian Universalist Fellowship of Newark
United Methodist Women

# CONTENTS

Preface ........................................................................................................................ 4
Executive Summary ..................................................................................................... 6
Rationale and Methodology ......................................................................................... 7
Introduction: The Inescapability of Race .................................................................... 9
Significant Findings
       Finding 1 ...................................................................................................... 10
       Finding 2 ...................................................................................................... 12
       Finding 3 ...................................................................................................... 13
Conclusions and Recommendations ........................................................................... 20
Endnotes ..................................................................................................................... 21
       Appendix A .................................................................................................. 25
       Appendix B .................................................................................................. 26
       Appendix C .................................................................................................. 27

## ABOUT THE AUTHOR

Thomas P. Eichler, M.A., M.P.A., was a Delaware cabinet official during the administrations of Governor Castle, where he served as Secretary of Health and Social Services, and Governor Carper, where he served as Secretary of Services to Children, Youth and Their Families. While Secretary of Health and Social Services he was also a member of the State's Criminal Justice Council. He was also the first Executive Director of Stand Up for what's Right and Just (SURJ), a Delaware advocacy organization, serving through June 2004.

## ACKNOWLEDGEMENTS

This report is modeled after the report of the Justice Policy Institute titled *Race and Incarceration in Maryland* (October 2003) by Vincent Schiraldi and Jason Zidenberg (www.justicepolicy.org). Thanks to Kevin R. Reitz for the use of his graph depicting male incarceration by race from 1880 to 2000. The author is indebted to many people for their assistance, including John P. O'Connell and his staff at the Statistical Analysis Center for their data and advice. Thanks to Dr. Leland Ware for reviewing this report and providing the Preface. Also thanks to Dr. Lana Harrison, Dr. Frank Scarpitti, and Dr. Tim Brandau for their review of the report and to others whose review and comments have contributed to this report. I also wish to thank the Delaware Center for Justice for publishing and distributing this report.

The opinions expressed in this report are those of the author and not necessarily those of his affiliated organizations, past or present, or the funders of this report.

## PREFACE

The United States has world's highest incarceration rate. Delaware, the second smallest state, enjoys the dubious distinction of having one of the highest incarceration rates of any of the 50 states in America. More important, the scales of justice in Delaware weigh far more heavily on African Americans than similarly situated Whites.

Incarceration Rate per 100,000 population[1]



In Delaware, Blacks represent:

- 20% of the general population;
- 42% of those arrested for criminal offenses;
- 64% of the prison population; and
- 86.8% of those incarcerated for drug offenses.

This is not, as many assume, attributable to a higher incidence of criminal behavior among Blacks. The national data shows that Non-whites are statistically more likely to be imprisoned because they are more likely to be arrested than Whites. Much of this appears to be attributable to the "war on drugs." Studies have consistently shown that Whites use drugs at rates comparable to Blacks, which makes them the vast majority of illicit drug users. White drug dealers far outnumber Black dealers. Yet, of those incarcerated for drug charges in Delaware, Blacks represent 86.8 percent of those sentenced to prison terms for drug offenses.

4

The percentage of Blacks incarcerated in Delaware--63.79% of all detentions; 64.30% of the jail and prison population-- far exceeds the Black arrest rate, which is only 41% of all arrests. In comparison, the percentage of White incarceration --36.03% of those detained; 35.61% of the jail and prison population --is significantly below the White arrest rate, which is 56% of all arrests. Among those arrested, African Americans are two-and-a-half times more likely to serve prison terms than Whites. Among those arrested on drug charges, African Americans are five times more likely to be sentenced to prison terms of a year or more than Whites arrested on the drug charges.

**The cause of these disparities is not entirely clear but one conclusion is inescapable**; Delaware's criminal justice system treats Blacks differently and far less favorably than similarly situated Whites. The data shows that the racial disparities in the criminal justice system are increasing. Public officials responsible for Delaware's criminal justice system must examine this problem and develop policies that will reverse this alarming trend.

Leland Ware
Louis L. Redding Professor of Law and Public Policy,
University of Delaware

## EXECUTIVE SUMMARY

Delaware has one of the highest incarceration rates of any state, in a nation with the world's highest incarceration rate.

However, even more disturbing is that Blacks, who are 20 % of the general population in Delaware, are disproportionately represented between those being arrested and jailed, particularly for drug offenses.

Analysis of available data indicates that Blacks are being funneled into Delaware's prisons far beyond any explanation that can be made from either rates of arrest or illicit drug use.

Consider the following facts:

**Prison sentences:**
- Whites are 56% of those arrested,
- But Blacks are 64% of those sentenced to a jail or prison term.

**Drug use:**
- Whites are an estimated 73% of those using illicit drugs,
- But Blacks are 86% of those doing time for drug charges.

**Drug Treatment:**
- Whites are 59% of the admissions to the State's community drug treatment programs;
- But Blacks are a majority of those getting drug treatment in prison.

When you look at Delaware's prison census, you will see that Blacks comprise almost two-thirds of the prison population and are 86.8% of those incarcerated for drug offenses. In fact, Blacks account for two-thirds of the 344% increase in Delaware's prison capacity over 20 years.

From the data, we can derive a disturbing conclusion: *White offenders enjoy a revolving door back to the community compared to Black offenders, who are disproportionately sent to prison.*

Unequal risk of incarceration

As this report delineates, the risk of a White arrestee being sentenced to incarceration is only 40 % of the risk that a Black arrestee faces. Further, among arrestees on drug charges, the chance that a White drug offender will be sentenced to a prison term (one year or more) is only 21% of that faced by Black arrestees.

Three Significant Findings

This report presents three significant findings based on the data.
1. Blacks in Delaware are disproportionately represented in Delaware's criminal justice system versus their representation in the population at large.

6

2. As Delaware expanded its use of incarceration for drug offenses, Blacks have borne the brunt of the increase.
3. While the reasons for Black disproportionate representation in the DOC census are complex, several indicators raise questions about possible disparate consequences for illicit activity.

These facts set off many alarms ranging from questions about the quality of justice for Blacks to the effectiveness of public safety regarding White offenders. While more needs to be done to analyze the reasons for these disparities, some effective remedial steps can be taken now.

**Principle recommendations of this report include:**
1. Repeal Delaware's minimum mandatory drug sentencing laws in favor of judicial discretion under sentencing guidelines.
2. Examine enforcement and arrest policies to determine basis for White under representation by creating a special commission charged with making recommendations for feasible reforms in areas of pre-trial, sentencing, and correction policies.
3. Implement reforms recommended in existing government report findings, from reviewing the "violent" label put on drug offenses and improved treatment alternatives for Department of Correction inmates as recommended by the Sentencing Accountability Commission (SENTAC) to recommendations for alternatives for new prison construction that are made in the DOC master plans for male and female facilities.
4. Reduce caseloads of public defenders to meet the national standard.
5. Increase awareness of and access to drug and alcohol treatment programs and services by aggressively promoting availability (similar to the state's public education smoking cessation campaign), and by removing barriers to court-directed drug and alcohol treatment in group health insurance plans, starting with the State of Delaware's plan for State employees.

---

*"The combination of miscommunications, ignored warnings and general hubris – all in a culture that discouraged internal criticism – virtually guaranteed disaster. No, this is not a follow-up on NASA and the Columbia space shuttle tragedy. It is a commentary on criminal justice in America. The Columbia Accident Investigation Board, after months of painstaking investigation of the Feb. 1 space calamity, has issued a scathing report of those in charge. A similarly independent body ought to take a look at our criminal justice system. It would find, as the NASA investigators found, not so much a lack of information but rather an almost willful failure to connect the dots."*

William Raspberry, *Connect the Dots on Crime*, September 1, 2003

---

## REPORT RATIONALE AND METHODOLOGY

*Race and Incarceration in Delaware: A Preliminary Consideration*
was developed in response to continuing suggestions that reform of Delaware's criminal justice system cannot be effectively advanced without a growing understanding of the impact of existing policies, particularly the war on drugs, on the African American community in Delaware.

Unfortunately there presently is no other analysis of this issue regarding Delaware's adult criminal justice system. Considering that Delaware ranks high in its national rate of

7

incarceration and ranks first among the states in its expenditure for corrections (per capita state and local expenditures), it would seem surprising that there has been no examination of this by the State's official policy agencies such as the Criminal Justice Council or the Sentencing Accountability Commission.

In any case, limited, initial consideration of the issue is made here in the hope of sparking continuing research and dialogue on this fundamental issue of the quality of justice in Delaware.

This report explores one relatively simple question. *Realizing that the Black population is 20% of the State's overall population, I set out to find out how that one-fifth of the population is represented in the criminal justice system.* This report does not track individuals moving through the system. It looks at the relative percentage representation of Blacks and Whites in various groups (general population, illicit drug users, arrestees, incarceration). Estimates of the relative risk of Blacks and Whites being in a group are also made. For example, the risk of White arrestees being incarcerated is compared to risk faced by Black arrestees. For more on the data and methodology see the Appendices.

The report analyzes demographic data about Delaware's criminal justice system, principally data on arrests in 2000 and the Department of Correction (DOC) census for June 30, 2000, supplemented with DOC census data for 1980 and 1990. These arrest and DOC census data are from the Delaware Statistical Analysis Center (DelSAC). The choice of using the year 2000 is made because that is the most recent year for which both arrest and DOC census data could be obtained reflecting demographic (race) characteristics. Other sources, particularly those lending national perspective, include the U.S. Justice Department's Bureau of Justice Statistics and the U.S. Department of Heath and Human Services' Substance Abuse and Mental Health Services Administration (SAMHSA). The Justice Policy Institute's report *Race and Incarceration in Maryland* (October 2003) has served as a model for this report on comparable issues in Delaware, although each report benefits from the unique state-level sources available to them.

This report is subtitled *A Preliminary Consideration* because of the limited analysis that has been done here, in part dictated by the limited data from which the analysis could be drawn. This report does not focus on Latino representation in the Delaware criminal justice system because lack of definition in the State's statistics prevents such consideration. Generally this report will refer to the demographic categories of White, Black, Other as these are the categories used in the Department of Correction data provided by DelSAC. Some other sources refer to African American and such reference is generally used when those sources are indicated. The report focuses on adult populations, leaving juveniles for another day.

Tom Eichler

8

## INTRODUCTION
### The Inescapability of Race in the Discussion of Incarceration
### in Delaware and Nationwide

> *"We must confront another reality. Nationwide more than 40% of the prison population consists of African-American inmates. About 10% of African-American men in their mid-to-late 20s are behind bars. In some cities, more than 50% of young African-American men are under the supervision of the criminal justice system…. Our resources are misspent, our punishments too severe, our sentences too long."*
>
> Justice Anthony Kennedy, speaking at the American Bar Association, August 2003.

A consideration of the facts on incarceration in the United States cannot proceed very far before recognizing that the policies that result in the U.S. having the world's largest prison population (2 million persons) and the highest incarceration rate (702 per 100,000 population) have had a disproportionate impact on African Americans, Latinos and other communities defined as non-White.[2] The most recent figures from the Justice Department's Bureau of Justice Statistics show that, in 2002, African Americans nationally were incarcerated at 7.4 times the rate of Whites, and Latinos were incarcerated at 2.7 times the rate of Whites.[3]  African Americans and Latinos comprised 70% of all persons incarcerated in the U.S. in 2002, even though African Americans and Latinos make up 25% of the U. S. population.[4]

In its August 2003 report, the Bureau of Justice Statistics reported that if incarceration rates continue at the 2001 level, one in 17 White men (5.9%), one in six Hispanic men (17.2%), and one in three African American men (32.2%) born in 2001 will serve time in prison at some point in their lifetimes.  The report also indicated that 5.6 million Americans are current or former prisoners; 39% of those are African Americans (2,166,000),[5] even though African Americans comprise only 12.8% of the national population.[6]

Figure 1.4.  Male Imprisonment Rates by Race, 1880 to 2000



SOURCES: U.S. Department of Justice, Bureau of Justice Statistics, *Prisoners in 2000* (Washington, DC: Bureau of Justice Statistics, 2001), p. 11 table 15; Margaret Werner Cahalan, *Historical Corrections Statistics in the United States, 1850-1984* (Washington, D.C.: U.S. Government Printing Office, 1986), pp. 34 table 3-6, 65 table 3-31; Margaret Cahalan, "Trends in incarceration in the United States since 1880: A Summary of Reported Rates and the Distribution of Offenses," *Crime & Delinquency*, 25:9-41 (1979), p. 40 table 11; Bureau of the Census, *Census of Population* (various years).

(See endnote [7])

This policy analysis will examine the issue of racial disparities on Delaware's criminal justice system, focusing particularly on the disproportionate representation of Blacks among the state's incarcerated population, and among those serving drug sentences.  Although there is debate among academics and policy makers as to the cause of the disproportionate

9

representation of people of color in Delaware's prison system, *the fact that the growing use of incarceration in Delaware has disproportionately impacted the state's Black citizens is undeniable*:

- Blacks as proportion of the general population: 20%[8]
- Blacks as proportion of State incarcerated[9] population: 64.2%[10]
- Blacks as proportion of State population incarcerated for drug offense: 86.8%[11]

## SIGNIFICANT FINDINGS

**Finding 1: Blacks in Delaware are disproportionately represented in Delaware's criminal justice system versus their representation in the population at large.**

*"This mass imprisonment of such a large portion of African Americans raises questions of justice, fairness, and access to resources to rehabilitate offenders after making bad choices. Many of these men and women are from poor and working class neighborhoods."*

*The State of Black America 2003*, National Urban League[12]

Black men are incarcerated at nearly seven times (6.78) the rate of White men.[13]  In 2000, according to the Delaware Population Consortium, 20 % of Delaware's general population was Black[14].  However, Blacks comprised 64.21 % of the Department of Correction (DOC) census in 2000.[15]  As noted above, nationally, Blacks are incarcerated at 7 times the rate of Whites, similar to but slightly higher than the Delaware rate.

In the 20-year period from 1980 to 2000 the Delaware DOC census had increased from 1,436 inmates to 6,374- a 344 % increase.  Black inmates have disproportionately represented this dramatic increase:

- Black increase 389%;
- White increase 280%.



**DOC Population Increase**

| | 1980 | 1990 | 2000 |
|---|---|---|---|
| Black | 837 | 2261 | 4093 |
| White | 598 | 1313 | 2274 |

The percentage of the DOC census composed of Blacks grew in the 20-year period:

| Year | % Black |
|---|---|
| 1980 | 58.29 |
| 1990 | 62.20 |
| 2000 | 64.21 |

The DOC census grew from 1,435 in 1980 to 6,374 in 2000.  Of that growth:

- 3,256 were Blacks; and
- 1,676 were Whites.

10

For every additional White in the 20-year increase in the DOC census there were two Blacks.

*Consider the implication of this finding.* If the 20-year census increase were proportionate to the State's general population, for every four additional Whites added there would be one Black. However, the experience has in fact has been that for every 4 additional Whites there have been 8 additional Blacks in the growth of the DOC census.

While women represent only 7.89 percent of the total DOC census, Black women are disproportionately represented at 5 times the rate of White women.[16]

Changes in incarceration rates between 1980 and 2000 show that while the number of Whites incarcerated grew during the 20-year period, the number of Blacks incarcerated grew faster, and the proportion of Whites incarcerated declined.

Number Incarcerated

|       | 1980  | 1990  | 2000  | % Change |
|-------|-------|-------|-------|----------|
| White | 598   | 1,313 | 2,274 | 280.27%  |
| Black | 837   | 2,261 | 4,093 | 389.01%  |
| Other | 1     | 61    | 7     | 600.00%  |
| Total | 1,435 | 3,574 | 6,374 | 344.18%  |

The rate of incarceration per 100,000 populations grew in all categories, but the Blacks incarcerated per 100,000 is the highest.

Rate Per 100,000

|       | 1980 | 1990  | 2000  |
|-------|------|-------|-------|
| TOTAL | 241  | 537   | 811   |
| WHITE | 123  | 242   | 384   |
| BLACK | 873  | 1,993 | 2,596 |

Expressing the 2000 incarceration rates another way:
- One Black male out of 20 is incarcerated;
- One White male out of 140 is incarcerated;
- One Black female out of 284 is incarcerated;
- One White female out of 1,448 is incarcerated.



For the total Delaware population, one person out of 123 is incarcerated, or a rate of 811 per 100,000 population. This compares with one out of 142 incarcerated in the United States (699 per 100,000, 702 in 2002), the highest rate for any nation in the world.[17] *In short Delaware has an incarceration rate that towers over the national rate, which itself is the highest of any nation.*

11

## Finding 2: As Delaware expanded its use of incarceration for drug offenses, Blacks have borne the brunt of the increase.

*"The collective portrait of prisoners is very telling. Three-quarters have a history of drug or alcohol abuse, one-sixth a history of mental illness, and more than half the women inmates a history of sexual or physical abuse. Most prisoners are from poor or working-class communities and two-thirds are racial and ethnic minorities."*

*Invisible Punishment: The Collateral Consequences of Mass Imprisonment[18]*

The DOC incarcerated population in 2000 of 6,374 includes 1,033 with a drug charge, or 16% of the total population:

- 167 detained on drug charges;
- 866 serving a sentence.[19]

Of those incarcerated on drug charges, Blacks are 86.8 % of both the detained and sentenced population.

Drug offenses as a percentage of the DOC census grew dramatically between 1980 and 1990, then stabilized, while the total number continued to increase:

|                       | 1980  | 1990   | 2000   |
|-----------------------|-------|--------|--------|
| Drug Offenses         | 61    | 628    | 1,033  |
| DOC Census            | 1,436 | 3,513  | 6,374  |
| percent drug offenses | 4.25% | 17.88% | 16.21% |

The absolute number has increased from 61 in 1980 to 1,033 in 2000.

**Drug Offenses In DOC Census**



The Black percentage of those incarcerated for drug offenses has greatly increased in the 20-year period:

- 57.38 in 1980;
- 70.83 in 1990;
- 86.83 in 2000.

Several research entities have suggested that Black Americans are disproportionately incarcerated for drug offenses in the United States.[20] To help understand the scale of this situation, it is important to consider what is known to be the differences between indicators of drug use by different races, and drug incarceration.

According to national data, Whites use drugs at rates similar to Blacks in the U.S., and what disparity in use that may exist does not explain the level of disproportionate representation experienced in Delaware's prison system. According to the U. S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration (SAMHSA), in 2002, 8.5% of Whites, and 9.7% of Blacks reported using illicit drugs in the preceding

month. Among youth age 12 to 17, 10% of Black youth and 12.6% of White youth reported using illicit drugs within the preceding month.[21]



Race and Age of People Reporting
Use of An Illicit Drug In The Past
Month

Source: SAMHSA 2002 National Survey

Note on source[22]

Between 1980 and 2000 the DOC census of those incarcerated on drug charges increased from 61 persons to 1,033. The number of Whites and Others incarcerated with drug charges increased from 26 to 136 persons, while the number of Blacks increased from 35 to 897 persons. *In effect, of all the increases in the DOC census in 20 years because of drug charges, the Black increase was 25 times the 1980 number while Whites and Others increased 5 times the respective 1980 number.*



DOC Census Growth For Drug Offenses
1980-2000

|  | 1 | 2 |
|---|---|---|
| Black Drug Offenders | 35 | 897 |
| All Other Drug | 26 | 136 |

**Finding 3: While the reasons for Black disproportionate representation in the DOC census are complex, several indicators raise questions about possible disparate consequences for illicit activity.**

*"There is a gap in alternatives to incarceration, primarily a lack of community-based substance abuse and mental health treatment beds in Delaware. Because of these gaps in community-based supervision options, the Court has little choice but to use jail or prison for women offenders."*

Delaware Department of Correction Female Offender Master Plan[23]

The reasons why Blacks, who compose only 20% of Delaware's total population, account for 64% of the DOC census are complex. Considering this issue from a national perspective, researchers point to level of income as a major consideration. The data analyzed here do not include information on income levels of the DOC census prior to incarceration. But the level of income argument does not fully explain the disproportionate representation of Blacks when a fuller consideration of various dimensions is reflected.

A survey of the research by Vincent Schiraldi and Jason Ziedenberg indicates that "...whether or not White and racial and ethnic minorities actually *commit* crimes at the same

13

rates, non-Whites are more likely to be imprisoned because they are more likely to be *arrested* for a criminal act.[24]  They indicate:

> "*The nation's leading criminologists have found that higher arrest rates, alone, do not account for the scale of the problem.  Alfred Blumstein, a professor at Carnegie Mellon University and Director of the National Consortium on Violence Research found that 76% of the higher black imprisonment rate was accounted for by higher arrest rates for African Americans, while 24% could be attributed to racial bias or other factors.*"[25]

The data available for this report included arrest data for the entire year of 2000, as well as Department of Correction (DOC) census data for the end of the second quarter of 2000 (June 30).  As such it is not possible to determine how many incarcerations resulted from the year 2000 arrests.  However, it is possible to compare the relative percentage of Blacks and Whites in the year 2000 arrests with the relative percentage of Blacks and Whites in the DOC census data.

In Delaware the data reflective of the criminal justice system help illustrate the dimensions of disproportionality.  Consider that in Delaware, Blacks are:
- 20% of the general population;
- 42% of the arrests;[26]
- 64% of incarcerated population;
- 64% of those sentenced to jail or prison term; and
- 66% of those serving a sentence of more than a year.

**Delaware Criminal Justice System**



Note: Population means Delaware general population; Jail or Prison means any sentence to incarceration.

The percentage of Blacks incarcerated (detention: 63.79%, jail or prison: 64.30%) **far exceeds** the Black arrest rate (41%).  Meantime, the White incarceration percentage (detention: 36.03%, jail or prison: 35.61%) **significantly trails** the White arrest rate (56%).

The data also show that while more Whites were arrested (18,911) than Blacks (13,758), relatively fewer Whites were serving sentences:



Note: Sentenced means sentenced to jail or prison

14

Among those arrested, it is estimated that Blacks are two-and-a-half times (2.48) more likely to serve time than Whites. Expressing it another way, the risk that a White arrested person will be sentenced to incarceration is only 40% of the risk that a Black arrested person will be sentenced to incarceration. See **Appendix A** for methodology on risk calculation.

*We must ask: what is it about White arrests that they reflect such a low ratio to those sentenced to incarceration compared with Black arrests ratio to Blacks incarcerated?*

The disproportionality is more striking when considering drug offenses. The rate of illicit drug use, as discussed above, is roughly proportionate between Whites and Blacks. For the purpose of this analysis, Blacks, Whites, made an estimate of the percentage of illicit drug use and Other based on SAMHSA national estimates for illicit drug use by race and a Delaware-specific estimate of the rate of total drug use (8.45% in the past month. See **Appendix B** for estimation of illicit drug use by race. Based on this analysis, estimates for Delaware adult illicit drug use in the past month are:

- 22.28% Black;
- 73.37% White; and
- 4.35% Other.
  100%

The 22.28% rate for Blacks is nearly equivalent to the Black percentage of the total Delaware population (20%).

Drug arrests during the 12-month period of 2000 totaled 3,280, or 9.8% of the 33,485 arrests made that year. The 3,280 drug arrests break down into two major categories of drug arrests: sale and manufacture, and possession:

- 607 sale/manufacture arrests; and
- 2,673 possession arrests.

Looking at these 2000 arrest figures on the basis of the arrest rate per 100,000 populations indicates the following rates:

- Arrests of all types    4,259 per 100,000 general population;
- Arrests of Whites    3,191 per 100,000 White population;
- Arrests of Blacks    8,725 per 100,000 Black population.

Regarding arrests for drug charges, the rates are:

|  | Sale/Manufacture | Possession |
|---|---|---|
| All drug arrests | 77 | 340 per 100,000 general population; |
| White drug arrests | 31 | 210 per 100,000 White population; |
| Black drug arrests | 269 | 904 per 100,000 Black population. |

***Expressing these rates another way, the risk that a Black person will be arrested on a drug possession charge (904 per 100,000 Black persons) is more than four times greater (904/210) than the risk that a White person will be arrested on a drug possession charge (210 per 100,000 White persons).***

***The risk of White users of illicit drugs being arrested is only 19% of the risk that a Black user will be arrested. This is in spite of the fact that White persons are estimated to constitute about 73% of the illicit drug using population in Delaware.***

For those thinking that the arrest differential may be explained by choice of drug, say marijuana which is seen by some as less serious while cocaine is considered to be of major concern, according to SAMHSA's 2002 survey, White users of cocaine in the past year

15

(4.172 million persons) outnumbered Black cocaine users (760,000) by 5.5 to 1.[27] See Appendix C for national data on use of cocaine by race.

***The risk of arrest for sale and manufacture is even more contrasting: the risk of a Black person being arrested (269 per 100,000) is more than eight times higher (269/31) than a White person (31 per 100,000).***

The issue here is whether Blacks are eight times more likely to be engaged in sale and manufacture of illicit drugs, in contrast to being arrested for it. Unlike arrest and incarceration data, there are no Delaware quantitative data on this question, although there are qualitative data from the National Drug Intelligence Center, as indicated below.

*"Research on patterns of drug purchase and use demonstrates that overall drug users report their main drug providers are sellers of the same racial or ethnic background as they are."*

Dorothy Lockwood, Anne E. Pottieger, and James A. Inciardi [28]

From a national perspective, according to the Leadership Conference On Civil Rights' report *Justice on Trial:*

"...*since it is empirically true that more whites than non-whites used crack drugs in this period, this argument presumes that whites largely bought their crack from non-whites. Studies, however, suggest the contrary – that drug users tend to purchase their drugs from individuals of the same race as the user, and that drug seller racial breakdowns are similar to drug user racial breakdowns."*[29]

Other studies also strongly suggest that drug users tend to purchase from those of the same race. According to the Human Rights Watch report *Punishment And Prejudice: Racial Disparities In The War On Drugs:*

"...*such data as exists indicates whites constitute a far greater share of the drug selling population than of the population arrested for drug selling. For example, during the period 1991-1993, SAMHSA included questions about drug selling in the annual NHSDA survey. Although the responses are best seen as a rough approximation of drug selling activity, they are nonetheless highly suggestive...On average over the three year period, blacks were 16 percent of admitted sellers and whites were 82 percent. According to research on patterns of drug purchase and use in selected major cities, drug users reported that their main drug sources were sellers of the same racial or ethnic background as they were...A large study conducted in the Miami, Florida metropolitan area of 699 cocaine users (powder and crack) revealed that over 96 percent of users in each ethnic/racial category were involved in street-level drug dealing, which again would suggest a racial profile of sellers that is comparable to that of users."*[30]

SAMHSA's 2002 survey reports data on sale of illegal drugs by youth aged 12 to 17 years. Among 1,076 respondents indicating they had sold drugs in the past year, 961 were White and 135 were Black.[31]

Michael Coyle, writing from a national perspective has suggested that:

"*Most criminal justice analysts argue that racial disparities in arrest and imprisonment relate to demographics. Crack is usually sold in small quantities in open-air markets. Powder is more expensive and is usually sold in larger quantities behind closed doors in locations that are inherently private. In urban areas the "fronts" of crack use and sales are large metropolitan centers that gather the greater emphasis of law enforcement. Since minorities and lower income persons are most likely to inhabit these areas, they are therefore at greater risk of arrest for crack cocaine possession than are white and higher*

16

*income powder offenders. The latter inhabit working class and upper-class neighborhoods where drug sales are more likely to occur indoors instead of the street sales of the urban neighborhoods that receive disproportionate (greater) attention from law enforcement. Though it true that open-air drug sales are easier to observe than indoor drug sales, the current allocation of law enforcement resources results in a policing structure that is race and class imbalanced."* [32]

### These findings strongly suggest that most drug dealers nationally are White. Is there any reason not to suspect that to be the case in Delaware as well?

The National Drug Intelligence Center's report *Delaware: Drug Threat Assessment* provides a drug-by-drug assessment of trafficking in Delaware.[33] While not providing numeric data in reviewing the drug threat by various types of drugs, the report does make the reference to dealers by race, including (emphasis supplied):

- Cocaine  *"African American and **Caucasian** local independent dealers…dominate transporters of cocaine into Delaware"*;
- Regarding "Wholesale-level cocaine distribution" in Delaware – *"Dominican criminal groups control the wholesale- and retail-level distribution of powdered cocaine in Wilmington, while **Caucasian** local independent dealers are the primary distributors of powdered cocaine elsewhere in the state"*;
- Regarding heroin – *"African American and **Caucasian** local independent dealers, Dominican criminal groups, and local street gangs…are the dominant transporters of heroin into the state."*
- *"Marijuana is the most widely abused illicit drug in Delaware…**Caucasian** local independent dealers and abusers are the primary cannabis cultivators in the state…African American and **Caucasian** local independent dealers and Mexican criminal groups…also transport marijuana into the state…(Jamaican criminal groups) often sell mulitpound quantities of marijuana to African American and **Caucasian** local independent dealers…"*;
- Ecstasy – *"**Caucasian** criminal groups and independent dealer are the primary transporters…"*
- Diverted pharmaceuticals – *"**Caucasian** local independent dealers and abusers are the primary retail-level distributors of diverted pharmaceuticals in Delaware."*

Clearly, Whites (Caucasians) figure prominently among those dealing drugs in Delaware, even if there are no numbers to quantify the present situation.

Under the circumstances, one might expect that the 424 Black arrests for sale/manufacturing might be accompanied by more than 2,000 White arrests for sale/manufacturing, instead of the 182 that were actually recorded in the year. Why are so relatively few Whites arrested in Delaware on drug sale/manufacturing charges?

The Delaware picture of the criminal justice system regarding drug offenses portrays the following picture for Blacks:

- 20% of the general State population;
- 22.28% estimated illicit drug use in previous month;
- 56% of drug arrests;
- 87% of those detained for drug charge;
- 85% of those sentenced to incarceration for a drug charge;
- 84% of those sentenced to greater than a year for drug charge.

17





**Delaware Criminal Justice System - Drug Offenses**

| | Popul | Illicit | Arres | Deten | Sente | Sente |
|---|---|---|---|---|---|---|
| White | 75.38% | 73.37% | 35.52% | 12.57% | 12.57% | 11.19% |
| Black | 20.06 | 22.28 | 56.37% | 86.83 | 86.84 | 84.10% |

Note: Sentenced means to jail or prison

Even if one is not persuaded on the disproportion issue regarding either Black percentage of the population (20%), or estimated drug use (22.28%), one should consider the relationship of arrests for drug charges to incarceration. The data available for this analysis, entire year of arrest data for 2000, and one day DOC census on June 30, 2000, while not strictly comparable, do allow for a comparison of relative ratios of arrests to incarceration by race.

**Presumably,** an arrest on a drug charge is equally serious and well founded irrespective of race. That being the case, even in the face of differing rates of arrests for drug charges by Whites and Blacks, one would expect to see relatively comparable levels of incarceration. However, the picture is:



**Drug Arrests - Sentences**

| | Arrest for Drug | Detention for Drug | Sentence for Drug | 1yr + sentence |
|---|---|---|---|---|
| White | 1165 | 21 | 114 | 83 |
| Black | 1849 | 145 | 752 | 624 |

### *This graph raises the question: Where have all the White drug arrestees gone?*

Among those arrested on a drug charge, the risk that White persons arrested on a drug charge will be sentenced to a year or greater prison term is only one-fifth (21.11%) the risk faced by Black persons arrested on a drug charge.

*Unless one believes that the quality of the arrests of Whites for drug charges was largely defective compared to those for Blacks, one must consider whether there is significant disproportionate application of post-arrest justice procedures.*

A consideration of possible key reasons why communities of color are over represented in the corrections system is made by Schiraldi and Ziedenberg and includes:[34]

- Overrepresentation in the corrections system is one result of social disadvantages (less access to high quality education, high unemployment rates).
- Policing practices targeting low-income communities have the unintended consequence of arresting disproportionately more people of color, even though Whites use and sell at the same or higher rates. If one is more likely to be arrested, one is more likely to build up a criminal history resulting in subsequent incarceration.

18

- Whites, by the nature of their relatively better economic status, may have access to better legal representation who more vigorously advocate for their release. Studies in the juvenile justice system have shown that White youth are twice as likely as Black youth to retain private counsel, and youth represented by private attorneys are less likely to be convicted and less likely to be tried as adults than youth represented by either public defenders or appointed counsel.[35]
- Whites may have better access to high quality treatment and related services to avoid crime and prison. Race may influence the decision-making of criminal justice professionals, including officers of the court. Schiraldi and Ziedenberg report on studies indicating that Whites are more successful than non-Whites at getting charges reduced to misdemeanors or infractions.[36]

In Delaware, the Office of Public Defender attorneys handling cases in Superior Court carry an average of 410 cases per year (237 felony cases, 153 violation of probation cases, and 20 cases returned from appeal) compared with the national standard of 150 felony cases.[37]

In Delaware, Whites were 59% of admissions for State provided community-based adult drug and alcohol treatment, but only 13.2% of those serving a drug sentence, while Blacks were 36% of State community-based treatment admissions but 86.8% of the population serving a drug sentence.[38]

The disproportionate geographic participation in state-funded drug and alcohol treatment is illustrated by a 1999 study commissioned by The Division of Alcoholism, Drug Abuse and Mental Health by Robert A. Wilson. It indicates while the City of Wilmington represents 8.9 percent of the State population in need of treatment that:

- For every 17.8 residents of Wilmington in need of treatment, one person is treated;
- Compared with New Castle County, 4.1 to 1;
- Kent County 8.8 to 1; and
- Sussex County 8.9 to 1.[39]



**Incarceration vs. Treatment By Race**

Note: indicates percentage of participants in State's community-based drug and alcohol treatment versus percentage of population incarcerated on a drug conviction.

19

## CONCLUSIONS AND RECOMMENDATIONS

*The limited nature of the data used in this analysis is sufficient to document a serious disproportionate representation of Blacks in Delaware's criminal justice system, especially when comparing arrest rates with rates of those sentenced to incarceration. This is especially true for drug offenses. While the data are sufficient to raise issues, the issues they raise cannot be answered with the data available here.*

**Further analysis** should be done to:

- Track cases from arrest to disposition to allow for understanding of disproportionate representation by race, gender, jurisdiction, prior criminal record;
- Flag trends through longitudinal reporting;
- Assess juvenile justice experience to see how it compares with the adult experience; and
- Evaluate adequacy of legal defense for the indigent.

Such analysis should be undertaken **on a regular basis by the State's agencies** responsible for monitoring the criminal justice system, with reports to the bodies responsible for policy development. The Delaware Statistical Analysis Center (DelSAC), for example, should be charged and resourced to analyze the data it already collects for policy implications, such as those raised here.

**DelSAC** should be equipped to **conduct racial/ethnic impact statements** the same way it presently provides bed impact statements on pending legislation.

**In order to achieve the kind of balanced approach to public safety that public opinion and best practices support, the following recommendations are made for further consideration.** The State criminal justice policy bodies should:

- Make a commitment to research-based policy development and data-based evaluation of existing policy;
- Create racial and ethnic impact statements for all criminal justice legislation;
- Examine enforcement and arrest policies to determine basis for White under-representation;
- Reduce caseloads of public defenders;
- Restore to judges discretion on drug minimum mandatory sentencing;
- Aggressively promote access to drug and alcohol treatment comparable to the "stop smoking" advertising campaign being advanced by the State;
- Implement the recommendation of the Treatment Task Force for drug and alcohol screening of arrestees;
- Require all drug and alcohol clinical assessments by the Treatment Access Center (TASC) to be complete and available to the judge at time of sentencing;
- Remove barriers to court-directed drug and alcohol treatment in group health insurance plans, starting with the State of Delaware's plan for State employees;
- Implement Sentencing Accountability Commission (SENTAC) recommendations including reviewing the "violent" label on drug offenses, and those recommendations for improved treatment of DOC inmates;[40]
- Implement the recommendations for alternatives for new prison construction that are made in the DOC master plans for male and female facilities;[41] and
- Create special commission charged with making recommendations for feasible reforms in areas of pre-trial, sentencing, and correction policies.

20

## ENDNOTES

[1] Delaware rate based on analysis of *DOC Demographics for June 30, 2000 Snapshot Population.* Delaware Statistical Analysis Center, January 2003. U.S. rate from Harrison, Paige M. and Jennifer C. Karberg, *Prison and Jail Inmates at Midyear 2002,* April 2003, Washington, DC: Office of Justice Programs, Bureau of Justice Statistics, page 2, Table 1 an narrative. International rates from International Centre for Prison Studies, available on line at www.prisonstudies.org.

[2] Harrison, Paige M. and Jeffifer C. Karberg, *Prison and Jail Inmates at Midyear 2002,*April 2003, Washington, DC: Office of Justice Programs, Bureau of Justice Statistics, page 2, Table 1 and narrative. The 702 compares with 690 at midyear in 2001, the previous year. Note that since the original draft of the report BJS has published its new report for 2003 showing the U.S. incarceration setting another record high at 715 persons incarcerated per 100,000 population, www.ojp.usdoj.gov/bjs/pub/pdf/pjim03.pdf

[3] *Id.* Table 14, page 11. Rate of persons incarcerated (prison and jail) by race: Ratio of Whites to African American incarcerated 7.411; Whites to Hispanic 2.681.

[4] *Id.* Table 13, page 11. Calculation of male and female populations divided by total population.

[5] Bonczar, Thomas, *Prevalence of Imprisonment in the U.S. Population, 1974-2001.* (2003) Washington, Dc: Office of Justice Programs, Bureau of Justice Statistics. Table 4, page 4.

[6] U.S. Census Bureau website, Table 1. Population by Age, Sex, and Race and Hispanic Origin: March 2002, http://www.census.gov/population/socdemo/race/black/ppl-164/tab01.txt

[7] Kevin R. Reitz, *Sentencing at the Crossroads: An Exploration of the Journey; Past, Present, and Future,* Plenary Session, Annual Meeting of the National Association of Sentencing Commissions, Seattle Washington, August 11, 2003

[8] Delaware Population Consortium, Population Projection Series, October 8, 2002 for July 1, 2000. http://www.dehealthdata.ocr/population/DPC_2002VO.pdf, Total Delaware population: 783,600; Black population: 157152.

[9] For the purpose of this report "incarcerated" means anyone counted on the DelSAC DOC census report of January 13, 2003, in the categories of: major institutions; the work release centers; other DOC locations. Not included from the DelSAC reports are the categories of: home confinement and supervised custody; and absconders and escapees.

[10] Based on analysis of *DOC Demographics for June 30, 2000 Snapshot Population,* Delaware Statistical Analysis Center, January 2003. Analysis of this data shows a DOC census of 6374 including a Black census of 4093 The 6374 DOC CENSUS COMPARES WITH A 7,043 NUMBER REPORTED FOR Delaware by the Bureau of Justice Statistics report *Prison and Jail Inmates at Midyear 2000,* March 2001.

[11] *Id* Based on analysis of *DOC Demographics for June 30, 2000 Snapshot Population,* Delaware Statistical Analysis Center, January 2003. Analysis of this data shows 1,033 incarcerated on a drug offense, including 897 Blacks.

[12] The State of Black America 2003, *The Harmful Impact of the Criminal Justice System and War on Drugs on the African-American Family,* James R. Lanier, p. 169.

[13] White men incarcerated at rate of: 714 per 100,000 White men, Black men incarcerated at rate of 5072 per 100,000 Black men = 6.78 Black men to 1 White man.

[14] Profiles of General Demographic Characteristics 2000 Delaware, U.S. Census Bureau, May 2001, **Table DP-1. Profile of General Demographic Characteristics: 2000** http://www.cadsr.udel.edu/DOWNLOADABLE/DOCUMENTS/profile1.pdf

[15] From DelSAC report: DOC census included 4093 Blacks (male and female)/6374 total census = 64.21%

[16] From DelSAC report: White females incarcerated at rate of 69 per 100,000 White females; Black females at rate of 352 per 100,000 Black Females.

[17] Beck, Allen J. and Paige M. Harrison, *Prisoners in 2000,* August 2001, Washington, DC: Office of Justice Programs, Bureau of Justice Statistics, Table 1.

[18] Invisible Punishment: The Collateral Consequences of Mass Imprisonment, Edited by Marc Mauer and Meda Chesney-Lind, 2002, p. 2.

[19] Note: the DOC census is a one-day snapshot (June 30, 2000). There is high turnover in detention beds and in beds occupied by persons serving sentences of a year or less (jail). The total number of persons occupying DOC beds on drug charges in a full year is much higher than a one-day census number.

[20] A few of these studies include: *Justice on Trial,* Leadership Conference on Civil Rights and Leadership Conference Education Fund, www.civilrights.org/publications/reports/cj/; Punishment *and Prejudice: Racial Disparities in the War on Drugs, Human* Rights Watch, May 2000; *Race and the War on Drugs, Michael Toner, 1994 U. Chi. Legal Forum, Racial Disproportional of U.S. Prison Populations Revisited,* Alfred Blumstein, University of Colorado Law Review 1993; Analytical *and Aggregation Biases in Analyses of Imprisonment: Reconciling Discrepancies in Studies of Racial Disparity,* Robert Crutchield, George Bridges and Susan Pitchford, Journal of Research in Crime and Delinquency, 1994, **Race to Incarcerate**, Marc Mauer, The Sentencing Project, 2001.

[21] Substance Abuse and Mental Health Services Administration. (2003). *Results from the 2002 National Survey on Drug Use and Health: National Findings*, (Office of Applied Studies, NHSDA Series H-22, and DHHS Publication No. SMA 03-3836). Rockville, MD.

[22] Substance Abuse and Mental Health Services Administration. (2003). Results from the 2002 National Survey on Drug Use and Health: National Findings (Office of Applied Studies, NHSDA Series H-22, DHHS Publication No. SMA 03–3836). Rockville, MD.

[23] Tetra Tech, Inc., Pulitzer/ Bogard & Associates, L.L.C., Huskey & Associates. (2000). Delaware Department of Correction female offender master plan: findings and recommendation report, p.29.

[24] Schiraldi, Vincent and Jason Ziedenbert, *Race and Incarceration in Maryland*, October 23, 2003, The Justice Policy Institute. http://www.justicepolicy.org/downloads/finalmrd.pdf

[25] Alfred Blumstein, "Racial Disproportionality of U.S. Prison Populations Revisited," University *of Colorado Law Review* 64 (1993), pp. 743-60.

22

[26]Arrest data based on adult arrests for the year 2000, DelSAC report *2000 Arrest Statistic Statewide Totals For Delaware by Age, Race and Gender*, December 19, 2003.

[27] SAMHAS, Office of Applies Studies, National Survey on Drug Use and Health, 2002,1 Appendix B, Table 1.36A, Cocaine Use In lifetime, Past Year, and Past Month among Persons Aged 12 or Older, by Demographic Characteristics.

[28] Dorothy Lockwood, Anne E. Pottieger, and James A. Inciardi, "Crack Use, Crime by Crack Users, and Ethnicity," in Darnell F. Hawkins, ed *Ethnicity, Race and Crime*. New York: State University of New York Press, 1995, p.21.

[29] Leadership Conference on Civil Rights and Leadership Conference Education Fund, *Justice on Trial: Racial Disparities in the American Criminal Justice System*, referencing K. Jack Riley, "Crack, Powder Cocaine, and Heroin: Drug Purchase and Use Patterns in Six U.S. Cities", National Institute of Justice, United States Department of Justice (December 1997), p.1.

[30] Human Rights Watch, *PUNISHMENT AND PREJUDICE: RACIAL DISPARITIES IN THE WAR ON DRUGS*, Section VII. May 2000.

[31] Treatment, SAMHSA Drug Selling Youth, Highlights of Recent Reports on Substance Abuse and Mental Health, 2002 survey, www.samhsa.gov/oas/nhsda/2k2nsduh/Sect3peTabs24to29.pdf

[32] Michael Coyle, Race and Class Penalties in Crack Cocaine Sentencing, The Sentencing Project, www.Sentencingproject.org

[33]*Delaware Drug Threat Assessment Update*, U.S. Department of Justice National Drug Intelligence Center, May 2003, www.usdoj.gov/ndic/pubs4/4025/4025p.pdf

[34] Schiraldi and Ziedenbert, op cit, p.16-17.

[35] Bateman, Casey, Greg Jones and Mary Uhlfelder. *Issues in Maryland Sentencing—An Analysis of Unwarranted Sentencing Disparity* (2002). College Park, Maryland: State Commission on Criminal Sentencing Policy.

[36] Schmitt, Christopher, "Plea bargaining favors Whites, as blacks, Hispanics pay price," *San Jose Mercury News*, December 8, 1991, and Miller, Jerome G. *Search and Destroy: African American Males in the Criminal Justice System*. (1996) Cambridge University Press.

[37] Lawrence M. Sullivan, February 5, 2004 Joint Finance Committee Hearing.

[38] Delaware Health and Social Services, Division of Substance Abuse and Mental Health, Division funded adult admissions by fiscal year and client demographics -- State Fiscal Years 1986 -- 2002, www.state.de.us/dhss/dsamh/files/demo8600.pdf

[39] Wilson, Robert A., *The Dimension of Alcohol and Drug Abuse in the State of Delaware*, October 1999, Delaware Health and Social Services, Division of Alcohol, Drug Abuse and Mental Health.

23

[40] Sentencing Trends and Correctional Treatment in Delaware, April 10, 2002, Sentencing Accountability Commission, www.state.de.us/cjc/finalreport.pdf

[41]*Delaware Department of Correction Male Offender Master Plan: Findings and Recommendation Report*, June 1, 2000, Tetra Tech, Inc., Pulitzer/Bogard & Associates, Huskey & Associates and *Delaware Department of Correction Female Offender Master Plan: Findings and Recommendation Report*, June 1, 2000, Tetra Tech, Inc., Pulitzer/Bogard & Associates, Huskey & Associates

## Appendix A:  Data and Risk Analysis

The populations examined in the report are discrete groups with the data for each a "snap shot" of that group with no implication that individuals are being tracked across groups. The "snap shot" for each group is made for the same year 2000-time period but varies, for example:

- General population     July 1, 2000;
- DOC census             June 30, 2000;
- Arrest data            One year: January 1 – December 31 2000;
- Drug use               Whenever the SAMHSA phone survey was made in 2000.

The groups include estimates (general population estimated by Delaware Population Consortium, drug use based on surveys by Substance Abuse and Mental Health Services Administration) as well as "hard numbers" (DOC June 30 head count, arrest data for 2000).

The groups looked at vary considerably in size, from 592,596 Whites in the general population to 83 Whites sentenced to >1 year drug sentence for example. The analysis consists primarily of examining the relative percentage of Whites and Blacks in each group.

In addition, an estimate of risk is made in some cases to get a sense of the relative risk comparing the percent of, for example, Whites arrested to Whites sentenced to incarceration, relative to Blacks arrested to Blacks sentenced to incarceration:

$$\frac{\#\text{White Arrested} / \# \text{White Sentenced to Incarceration}}{\#\text{Black Arrested} / \# \text{Black Sentenced to Incarceration}} = \text{Ratio} \quad \begin{array}{l} \text{White: Black Arrested} \\ \text{to Incarcerated} \end{array}$$

$$\frac{18,911 \text{ White Arrests} / 1,886 \text{ White Incarcerated}}{} = 13,758 \text{ Black Arrests} / 3,406 \text{ Black Incarcerated}$$

$$\frac{10.03 \text{ White Arrest to White Incarcerated Ratio}}{4.04 \text{ Black Arrest to Black Incarcerated Ratio}} = \quad 2.48 \text{ Whites to 1 Black}$$

An estimate of the chance, or risk, that a White arrestee will be sentenced to incarceration, in comparison to a Black arrestee being sentenced to incarceration is:

$$\frac{4.04 \text{ Black Arrest to Black Incarcerated Ratio}}{10.03 \text{ White Arrest to White Incarcerated Ratio}} = 40\%$$

That is to say it is estimated that it is nearly two-and-a-half times more likely that a Black arrestee will be sentenced to incarceration than it is that a White arrestee will be sentenced to be incarceration.

Again, the data available for this analysis are not identical "snap shots", nor are individual arrestees being tracked through the criminal justice system toward incarceration. The disproportional racial representation found in these estimates highlight the urgency of more in depth analysis of what is happening and why in Delaware's criminal justice system. The implications of the risk estimates made here are:

- Black arrestees almost two-and-a-half times (2.48) more likely to serve time;
- Black arrested on drug charge four times (4.16) more likely to serve a drug sentence;
- Black arrested on drug charge nearly five times (4.74) more likely to serve a sentence longer that one year;
- Black user of illicit drugs is more than five times (5.23) more likely to experience an arrest on a drug charge.

## Appendix B

January 2, 2004   FILE: RESEARCH PROJECT 2004, TPEdrugEstimateJan.2004

Methodology for estimating prevalence of illicit drug use by Delaware population 12 years and older.

1. 2001 NHSDA State Estimates gives tables by state reporting past month use of any illicit drug. Chose the Total group, 1999-2000 that is 8.45 %.
   www.samhsa.gov/oas/nhsda/2k1State/vol1/appA.htm, Table A.1.
2. Multiplied the 8.45 rate by the July 1, 2000 Delaware population = 66433.
3. To estimate the numbers for White, Black, Other took the Delaware Population Consortium estimates for Delaware populations,
   http://www.cadsr.udel.edu/DOWNLOADABLE/DOCUMENTS/DPC_2001v0.pdf
   And multiplied by the national rates in SAMHSA national survey,
   http://www.samhsa.gov/oas/nhsda/2k2nsduh/Results/2k2results.htm#chap2,
4. Multiplied these rates by the respective populations.
5. Multiplied that result by the % of the Delaware population represented by each population group times the total estimated illicit drug use (66433) to the get the estimate for each population group.

CACULATION OF DRUG USE

| Illicit Drug Estimate | Drug use | Population | Drug use | % of pop. | Est. drug use |
|---|---|---|---|---|---|
| National rate, month | 0.083 | | | | |
| White | 0.085 | 590621 | 50203 | 73.37% | 48745 |
| Black | 0.097 | 157152 | 15244 | 22.28% | 14801 |
| Other | 0.083 | 35827 | 2974 | 4.35% | 2887 |

This calculation is done to get an estimate of the relative illicit drug use among the population groups, relative to other events. As such it does not purport to be an empirical calculation of Delaware drug use, but a way of getting relative estimates where no empirical data could be found.

# Appendix C

30415

Table 1.36A  Cocaine Use in Lifetime, Past Year, and Past Month among Persons Aged 12 or Older, by Demographic Characteristics: Numbers in Thousands, 2002

| Demographic Characteristic | TIME PERIOD | | |
|---|---|---|---|
| | Lifetime | Past Year | Past Month |
| **TOTAL** | 33,910 | 5,902 | 2,020 |
| **AGE** | | | |
| 12-17 | 670 | 508 | 146 |
| 18-25 | 4,786 | 2,087 | 631 |
| 26 or Older | 28,453 | 3,307 | 1,243 |
| **GENDER** | | | |
| Male | 20,325 | 3,960 | 1,364 |
| Female | 13,585 | 1,941 | 656 |
| **HISPANIC ORIGIN AND RACE** | | | |
| Not Hispanic or Latino | 30,402 | 5,153 | 1,799 |
| White | 25,971 | 4,172 | 1,271 |
| Black or African American | 3,272 | 760 | 440 |
| American Indian or Alaska Native | 265 | 47 | 29 |
| Native Hawaiian or Other Pacific Islander | 103 | 19 | 5 |
| Asian | 389 | 44 | 16 |
| Two or More Races | 402 | 112 | 38 |
| Hispanic or Latino | 3,507 | 749 | 220 |

*Low precision; no estimate reported.

Source: SAMHSA, Office of Applied Studies, National Survey on Drug Use and Health, 2002.

27