IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SALIH HALL, KENNETH SMITH, and LLOYD DIXON, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-392-SLR |
| | ) |
| GOVERNOR RUTH ANN MINNER, JOSEPH BEAU BIDEN, JAMES T. VAUGHN, CARL C. DANBERG, and RENATA HENRY, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 25th day of October, 2007;

IT IS ORDERED that the case is dismissed, without prejudice, for failure to state

a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915 and § 1915A,

and all pending motions are denied, for the reasons that follow:

1. **Background**. Plaintiffs Salih Hall[1] ("Hall"), Kenneth Smith ("Smith"), and

Lloyd Dixon ("Dixon") (collectively "plaintiffs"), are inmates at the Delaware Correctional

Center ("DCC"), Smyrna, Delaware.  They filed this action pursuant to Title II of the

Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12201, 12133.  They appear pro se

and have been granted leave to proceed in forma pauperis.

2. **Standard of Review**.  When a litigant proceeds in forma pauperis, 28 U.S.C.

§ 1915 provides for dismissal under certain circumstances.  When a prisoner seeks

redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for

---

[1]Salih Hall is also known as Cecil La'Roy Hall and Cecil L. Hall.

screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and §

1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is

frivolous, malicious, fails to state a claim upon which relief may be granted or seeks

monetary relief from a defendant immune from such relief. An action is frivolous if it

"lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325

(1989).

3. In performing the court's screening function under § 1915(e)(2)(B), the court

applies the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Fullman v. Pennsylvania Dep't of Corr., No. 4:07CV-000079, 2007 WL 257617 (M.D.

Pa. Jan. 25, 2007) (citing Weiss v Colley, 230 F.3d 1027, 1029 (7th Cir. 2000). The

court must accept all factual allegations in a complaint as true and take them in the light

most favorable to plaintiff. Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007);

Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "'a short

and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'" Bell Atl. Corp. v. Twombly, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting

Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint does not need detailed factual

allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Id. at 1965 (citations omitted). The "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the

assumption that all of the complaint's allegations in the complaint are true (even if

-2-

doubtful in fact)." Id. (citations omitted).  Because plaintiffs proceed pro se, their

pleading is liberally construed and their complaint, "however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers. Erickson v.

Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

    4. **Discussion**.  Plaintiffs are all serving sentences under Delaware's habitual

offender statute.  11 Del. Code § 4214.  They allege their convictions are a direct

consequence of their untreated chemical dependencies and discrimination against their

class in providing drug treatment.  (D.I. 4, ¶ 8)  Plaintiffs allege defendants Governor

Ruth Ann Minner ("Governor Minner"), Attorney General of the State of Delaware Joseph

Beau Biden ("AG Biden"), President Judge of the Delaware Superior Court James T.

Vaughn ("Judge Vaughn"), Commissioner of the Delaware Department of Correction

Carl C. Danberg ("Commissioner Danberg"), and Director of the Delaware Division of

Substance Abuse and Mental Health Reneta Henry ("Director Henry") are state officials

responsible for the State's policy "pertaining to the operation and practices of the

Delaware criminal justice system, including the assurance that the system does not

discriminate against particular illnesses and classes of the State's citizens."  (Id. at ¶ 9)

Plaintiffs allege defendants oversee a criminal justice system that systematically denies

meaningful treatment opportunities.  (Id. at ¶ 28)

    5.  Plaintiffs allege a chemical dependency is a brain disease which qualifies as a

disability under the ADA.  (Id. at ¶ 26)  Plaintiffs allege a connection between chemical

dependency and crime.  (Id. at 15)  They allege their individual criminal histories

document their respective chemical dependency, "including the fact that this disease has

-3-

been the underlying cause of conviction and incarceration." (<u>Id.</u> at ¶ 16) Plaintiffs also allege they are black and from low income communities and families and, because of their social-economic status, they have been unable to provide for their own chemical dependency treatment. (<u>Id.</u> at ¶ 17) They allege that because of their status they have been denied treatment and have been subjected to "racial profiling in sentencing practices, social stigma, and discard through continued incarceration without treatment opportunity, allowing for their disease to naturally progress, and ultimately labeled under the status of habitual offender as incorrigible." (<u>Id.</u>)

6. Plaintiffs allege that medical knowledge regarding chemical dependency "leaves no question" that incarceration alone cannot provide a "chance for reform" under Delaware's habitual offender statute. (<u>Id.</u> at ¶ 22) Plaintiffs allege that naming a criminal defendant as a habitual offender on the basis of crimes committed resulting from untreated chemical dependency amounts to deliberate indifference to serious medical/mental health needs in violation of the Eighth Amendment and constitutes systematic discrimination because of race and economic status or racial profiling in sentencing practices when determining the appropriateness of treatment for chemical dependency. (<u>Id.</u> at ¶ 22, 27) Plaintiffs allege they were denied treatment opportunities after the state received federal funds for treatment and were ultimately declared habitual offenders based upon previous convictions and sentences when no professional treatment was provided and, therefore, no legitimate chance for reform was offered or required. (<u>Id.</u> at ¶ 26) They also allege the State of Delaware failed to provide appropriate treatment contrary to plaintiffs' rights as third party beneficiaries to funding

allocated for treatment, training and re-entry into the community. (Id. at ¶ 29) )

7.  In essence, plaintiffs allege that they were entitled to drug treatment following each of their prior convictions before being declared habitual offenders by the State.[2] Plaintiffs seek declaratory and injunctive relief.  The complaint does not seek immediate drug treatment for plaintiffs.

8.  Plaintiffs filed a motion for class certification and several motions for injunctive relief.  (D.I. 5, 11, 13, 14)  Two of the motions for injunctive relief seek an order prohibiting defendants from transferring plaintiffs to different institutions.  (D.I. 11, 13)  The third motion for injunctive relief seeks basically the same relief as in the complaint except that plaintiffs seek current drug treatment as a means to redress "their violated constitutional right to treatment for their disease" or, in the alternative, that they be given treatment in a program other than the Gateway Program.  (D.I. 14, ¶ 8)

9.  **42 U.S.C. § 1983**.  Plaintiffs filed this complaint alleging violations of the ADA. Nonetheless, plaintiffs use language typically found in a civil rights complaint, particularly to the extent that they allege deliberate indifference to a serous medical need and discrimination on the basis of race.  When bringing an action pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Additionally, a civil rights complaint must state the

---

[2]Hall was declared a habitual offender after he acknowledged the same in his plea agreement.  (D.I. 4, ex. F at 4)  At the time of sentencing it was noted that Hall had a fifty-two (52) page rap sheet, which included robbery in New Jersey and nine burglary convictions in Pennsylvania, in addition to his Delaware convictions.  (Id. at 7)

conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)). The complaint contains no allegations directed towards any of the defendants other than to name them as parties in Part II of the complaint. Therefore, to the extent plaintiffs allege § 1983 claims, the court will dismiss without prejudice said claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

10. **Americans with Disabilities Act**. Plaintiffs seek recovery under the ADA advancing a novel theory that, had they been provided treatment for their drug dependencies, they would not have committed any crimes, and, therefore, would not have been sentenced as habitual offenders under Delaware law.[3] They also advance the theory that their chemical dependencies are disabilities within the meaning of the ADA and, because no treatment was provided (presumably by defendants), they had no legitimate opportunity for rehabilitation or "chance for reform" under the habitual offender statute.

11. The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. Title II, 42 U.S.C. § 12132 provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such

---

[3]Plaintiffs also allege race discrimination under the ADA. The allegations is frivolous and merits no further discussion.

entity." Individual defendants, however, are not public entities within the meaning of Title II of the ADA and are, therefore, not subject to suit. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002)(Individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."). To the extent that the claims are brought against defendants in their official capacity, said claims are, in essence, brought against the State of Delaware. See United States v. Georgia, 546 U.S. 151, (2006).

12. The ADA defines the term disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Drug abuse can constitute an impairment under the ADA. 42 U.S.C.A. § 12102; Bragdon v. Abbott, 524 U.S. 624, 632-33 (1998). However, the ADA explicitly excludes individuals "currently engaging in the illegal use of drugs" from its definition of an "individual with a disability." 42 U.S.C. § 12210(a). Moreover, in the context of drug abuse, in order to be considered a "qualified individual with a disability," the ADA requires that an individual has (1) "successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or (3) is erroneously regarded as engaging in such use, but is not engaging in such use. 42 U.S.C. § 12210 (b).

13. Plaintiffs attached exhibits to their complaint and submitted declarations

-7-

regarding their chemical dependency. (D.I. 4, 16, 17, 18)  The exhibits and declarations

evidence that plaintiffs are not considered individuals with a disability as defined by the

ADA.  As alleged, all three plaintiffs committed crimes while addicted to drugs.  (D.I. 4,

ex. D; 17, 18)  Plaintiffs were convicted and it is at this juncture that plaintiffs allege

defendants discriminated against them under the ADA.  Their drug use, however,

excludes a finding of disability under the ADA.  See 42 U.S.C. § 12210(a).

14.  Exhibits indicate that Hall successfully completed court sponsored substance

abuse programs in 1997 and had seven years of sobriety before relapsing.  (D.I. 4, ex. E

at 10-11)  Hence, he cannot claim a violation of the ADA, at least as to one conviction,

because he received treatment.  Regardless of his years of sobriety, Hall relapsed and

was using heroin daily for approximately one and one-half to two months prior to his

arrest leading up to the declaration that he is a habitual offender, said use again

excluding Hall as a qualified individual.  (Id. at ex. D)  Both Smith and Dixon state that

they never received treatment for their drug dependency.  Accordingly, they have not

successfully completed a rehabilitation program as is required for a finding that they are

individuals with a disability.  Finally, all plaintiffs allege they have drug dependencies; not

that they are recovering from their drug dependencies.  Indeed, the gist of their

complaint is that it is the State's fault that they did not recover from their drug

dependency, which in turn resulted in the commission of their crimes.  Based upon the

foregoing, plaintiffs cannot be considered qualified individuals with a disability as that

term is defined by the ADA.  Therefore, the court will dismiss without prejudice the ADA

claims as frivolous and for failure to state a claim upon which relief may be granted

pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

15. **Habitual Offender Statute**. Plaintiffs also attempt to use the ADA to attack the habitual offender statute. Initially, the court notes that the Delaware Supreme Court has held that the habitual offender statute does not impose an unconstitutionally disproportionate sentence in violation of the Eighth Amendment. Williams v. State, 539 A.2d 164, 180 (Del. 1988). Habitual offender penalties are reserved for those individuals who were not rehabilitated after the specified number of encounters with the criminal justice system and a corresponding number of chances to reform. Hall v. State, 473 A.2d 352, 356 (Del. 1984); Buckingham v. State, 482 A.2d 327, 330 (Del. 1984). The habitual offender statute, 11 Del. Code § 4214(b), states in part that any person "who has been 2 times convicted" of a felony specified in the statute must be sentenced to life imprisonment upon a third felony conviction. The Delaware Supreme Court has interpreted the statute as requiring three separate felony convictions, each successive to the other, with some chance for rehabilitation after each sentencing." Buckingham, 482 A.2d at 330. "[S]ome chance for rehabilitation" means only that some period of time must have elapsed between sentencing on the earlier conviction and the commission of the offense resulting in the later felony conviction. Hall, 473 A.2d at 357. It does not require that the State actually place an offender in a particular program such as a drug treatment program. State v. Walker, 2002 WL 32071668 (Del. Super. Ct. July 10, 2002). Indeed, pretrial detainees and prisoners have no constitutional right to drug treatment or other rehabilitation. Abdul-Akbar v. Department of Corrections, 910 F.Supp. 986, 1002 (D. Del.1995); see also Norris v. Frame, 585 F.2d 1183 (3d Cir.

1983); Fiallo v. de Batista, 666 F.2d 729, 730 (1st Cir. 1981); Smith v. Follette, 445 F.2d

955 (2d Cir. 1971). Accordingly, the court will dismiss without prejudice the claim as

frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1)

     16. **Statute of Limitations**. Even if plaintiffs had adequately stated a claim

under the ADA, Dixon's, Smith's, and most of Hall's[4] claims are barred by the applicable

two year limitation period. Claims under Title II of the Americans with Disabilities Act, 42

U.S.C. § 12132, are governed by the state statute of limitations for personal injury

claims. Foster v. Morris, 208 Fed. Appx. 174 n.3 (3d Cir. 2006) (citing Nieves-Marquez

v. Puerto Rico, 353 F.3d 108, 118 (1st Cir. 2003). In Delaware, a plaintiff must bring a

cause of action within two years of the injury giving rise to the alleged violations. See 10

Del. Code § 8119; Johnson v. Cullen, 925 F. Supp. 244, 248 (D. Del. 1996).

     17. The statute of limitations is an affirmative defense that generally must be

raised by the defendant, and it is waived if not properly raised. See Benak ex rel.

Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 n.14

(3d Cir. 2006); Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1167 (3d Cir. 1986).

"[W]here the statute of limitations defense is obvious from the face of the complaint and

no development of the factual record is required to determine whether dismissal is

appropriate, sua sponte dismissal under 28 U.S.C. § 1915 is permissible." Wakefield v.

Moore, No. 06-1687, 2006 WL 3521883, at *1 (3d Cir. Dec. 7, 2006) (citing Fogle v.

---

    [4]Hall was sentenced on December 1, 2006 and on that date the court signed an order declaring Hall a habitual offender pursuant to Hall's plea agreement. (D.I. 4, ex. F at 4). Inasmuch as the complaint was filed on June 16, 2007, Hall's last ADA claim was timely filed.

<u>Pierson</u>, 435 F.3d 1252, 1258 (10th Cir. 2006)).

18.  Plaintiffs claim they should have been provided drug treatment following each of their convictions prior to being declared habitual offenders.  The court takes judicial notice that in October 1994, Dixon was sentenced to mandatory life imprison as a habitual offender under 11 Del. Code § 4214(b).  <u>Dixon v. Carroll</u>, Civ. Action No. 01-810-SLR, 2003 WL 244805 (D. Del. Jan. 30, 2003).  Smith was declared a habitual offender following his June 3, 1998 conviction.  <u>State v. Smith</u>, Crim. Action No. IN98011102R2, 2004 WL 1551513 (Del Super. Ct. June 28, 2004).  Finally, Hall, who has a lengthy list of convictions, was last incarcerated in 1997 before committing his most recent offense that resulted in his habitual offender status.  (D.I. 4, ex. E at 10; ex. F at 7)

19.  Plaintiffs' complaint was filed at least by June 16, 2007, the date it was signed.[5]  Accordingly, plaintiffs' ADA claims must have occurred two years prior to that time by June 15, 2005.  It is evident that any ADA claims made by Dixon, Smith, and Hall, with the exception of the claims relative to his December 2006 conviction, are barred by the applicable two year limitation period.  Therefore, the court will dismiss said claims as barred by the applicable limitation period pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

---

[5]The computation of time for complaints filed by pro se inmates is determined according to the "mailbox rule" and the complaint is deemed filed as of the date it was delivered to prison officials for mailing to the court.  <u>Houston v. Lack</u>, 487 U.S. 266 (1988); <u>Burns v. Morton</u>, 134 F.3d 109, 112 (3d Cir. 1998); <u>Gibbs v. Decker</u>, 234 F.Supp. 2d 458, 463 (D. Del. 2002).  The complaint was signed June 16, 2007, and this is the earliest date it could have been delivered to prison officials for mailing.

20. **Habeas Corpus**. While plaintiffs filed this case as an ADA claim, the complaint speaks to the issue of plaintiffs' sentences as habitual offenders under Delaware law. It appears the real intent of the complaint is to attack the constitutionality of the habitual offender status and to remove plaintiffs' status as habitual offenders.

21. To the extent that plaintiffs attempt to challenge their conviction and/or sentence, their sole federal remedy for challenging the fact or duration of their confinement is by way of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973). The ADA does not provide such a remedy. Nor is such a claim cognizable under 42 U.S.C. § 1983 unless plaintiffs prove that their convictions or sentences have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477, 487 (1994). Plaintiffs have not alleged or proven that their convictions or sentences were reversed or invalidated as provided by Heck. Accordingly, the court will dismiss without prejudice the habeas corpus claims as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

22. **Miscellaneous Pending Motions**. The court will dismiss the complaint without prejudice. Accordingly, all pending motions (D.I. 5, 11, 13, 14) will be denied as moot.

23. **Conclusion**. Based upon the foregoing analysis, the case is dismissed, without prejudice, as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915 and § 1915A. All pending motions are denied as

moot.  (D.I. 5, 11, 13, 14).  Amendment of the complaint would be futile.  <u>See</u> <u>Alston v.</u>

<u>Parker</u>, 363 F.3d 229 (3d Cir. 2004); <u>Grayson v. Mayview State Hosp</u>., 293 F.3d 103,

111 (3d Cir. 2002); <u>Borelli v. City of Reading</u>, 532 F.2d 950, 951-52 (3d Cir. 1976).

UNITED STATES DISTRICT JUDGE

-13-